**UNITED STATES U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROUZBEH "ROSS" HAGHIGHAT,<br>BEHROUZ "BRUCE" HAGHIGHAT,<br>KIRSTYN M. PEARL, SEYEDFARBOD<br>"FABIO" SABZEVARI, and JAMES D.<br>ROBERGE | Hon. Michael E. Farbiarz<br><br>Crim. No. 25-339<br><br>**NOTICE OF PRETRIAL MOTIONS** |

**TO**:   All Counsel of Record

**PLEASE TAKE NOTICE** that on a date and time to be set by the Court, and in accordance with the Court's July 1, 2025 Scheduling Order (ECF No. 64), Defendant Rouzbeh "Ross" Haghighat, by and through his undersigned attorneys, shall move before the Honorable Michael E. Farbiarz, United States District Judge for the United States District Court for the District of New Jersey, for entry of an Order granting Mr. Haghighat's Pretrial Motions (i) for a bill of particulars requiring the Government to identify the alleged material non-public information Mr. Haghighat purportedly exchanged and *when* that information was provided to Co-defendants Behrouz "Bruce" Haghighat, Kirstyn M. Pearl, Seyedfarbod "Fabio" Sabzevari, and James D. Roberge; and (ii) to preclude certain statements made by Mr. Sabzevari during an interview with United States Postal Inspectors, pursuant to the United States Supreme Court's decision in *Bruton v. United States*, 391 U.S. 123 (1968) and its progeny.

**PLEASE TAKE FURTHER NOTICE** that, in support of his Pretrial Motions, Mr. Haghighat shall rely on the accompanying Omnibus Brief in Support of Defendant Rouzbeh "Ross" Haghighat's Pretrial Motions.

**PLEASE TAKE FURTHER NOTICE** that oral argument is requested.

**PLEASE TAKE FURTHER NOTICE** that a proposed Order is also submitted herewith.

Dated: August 8, 2025                                              Respectfully Submitted,


By: /s/ *Adam Fee*
      Adam Fee
      Paul C. Gross
      **PAUL HASTINGS LLP**
      200 Park Avenue
      New York, NY 10166
      (212) 318-6000
      adamfee@paulhastings.com
      paulgross@paulhastings.com

*Attorneys for Defendant Rouzbeh "Ross" Haghighat*

UNITED STATES U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROUZBEH "ROSS" HAGHIGHAT, BEHROUZ "BRUCE" HAGHIGHAT, KIRSTYN M. PEARL, SEYEDFARBOD "FABIO" SABZEVARI, and JAMES D. ROBERGE | Hon. Michael E. Farbiarz<br><br>Crim. No. 25-339<br><br>*Document Electronically Filed* |

**OMNIBUS BRIEF IN SUPPORT OF DEFENDANT ROUZBEH "ROSS" HAGHIGHAT'S PRETRIAL MOTIONS**

Dated:  August 8, 2025                           **PAUL HASTINGS LLP**

                                                               Adam Fee
                                                                Paul C. Gross
                                                                200 Park Avenue
                                                                New York, NY 10166
                                                                (212) 318-6000

                                                                *Attorneys for Defendant Rouzbeh "Ross" Haghighat*

# TABLE OF CONTENTS

                                                                                     **Page**

INTRODUCTION ................................................................................................................ 1
MOTION FOR A BILL OF PARTICULARS ................................................................... 3
    Relevant Facts ......................................................................................................... 3
    Legal Standard ........................................................................................................ 3
    Argument ................................................................................................................. 4
MOTION TO SUPPRESS STATEMENTS OF FABIO SABZEVARI ........................... 6
    Relevant Facts ......................................................................................................... 7
    Argument ................................................................................................................. 8

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bruton v. United States*,
   391 U.S. 123 (1968)..................................................................................................2, 8, 9

*Gray v. Maryland*,
   523 U.S. 185 (1998)................................................................................................3, 8, 9, 10

*Richardson v. Marsh*,
   481 U.S. 200 (1987)..........................................................................................................9, 10

*S.E.C. v. Alejandro Duclaud Gonzalez de Castilla*,
   184 F. Supp. 2d 365 (S.D.N.Y. 2002).....................................................................................1

*S.E.C. v. Truong*,
   98 F. Supp. 2d 1086 (N.D. Cal. 2000) ...................................................................................1

*Samia v. United States*,
   599 U.S. 635, 143 S. Ct. 2004 (2023).................................................................................10

*United States v. Addonizio*,
   451 F.2d 49 (3d Cir. 1971), *cert. denied*, 405 U.S. 936 (1972)..................................................4

*United States v. Farese*,
   2023 WL 6795083 (D.N.J. Oct. 12, 2023).............................................................................4

*United States v. Korbe*,
   2010 WL 2404384 (W.D. Pa. June 10, 2010)........................................................................4

*United States v. Manetti*,
   323 F. Supp. 683 (D.N.J. 1971) .............................................................................................4

*United States v. Moyer*,
   674 F.3d 192 (3d Cir. 2012)....................................................................................................3

*United States v. Rajaratnam*,
   2010 WL 2788168 (S.D.N.Y. July 13, 2010).........................................................................6

*United States v. Roque*,
   2013 WL 2474686 (D.N.J. June 6, 2013)..............................................................................4

*United States v. Rosa*,
   891 F.2d 1063 (3d Cir. 1989)..................................................................................................4

*United States v. Urban*,
    404 F.3d 754 (3d Cir. 2005)..................................................................................................3

*United States v. Zuniga*,
    No. 2:18-CR-00224-BRM, 2021 U.S. Dist. LEXIS 70113 (D.N.J. Apr. 12,
    2021) .....................................................................................................................................8

**Other Authorities**

Federal Rule of Criminal Procedure 7(f) .......................................................................................3

**INTRODUCTION**

"Courts stress that the [government] may not base insider trading actions on strained inferences and speculation." *S.E.C. v. Alejandro Duclaud Gonzalez de Castilla*, 184 F. Supp. 2d 365, 379 (S.D.N.Y. 2002) (quoting *S.E.C. v. Truong*, 98 F. Supp. 2d 1086, 1098 (N.D. Cal. 2000)). Likewise, an insider trading action may not rest merely on evidence of supposedly "suspicious trading," such that the jury would be required "*to speculate* that the defendant possessed" and misused "material nonpublic information." *Id.* (emphasis in original). And for very good reason. Absent these guardrails, the government could merely point to successful, profitable securities trading, and then work backwards to sketch out allegations that the trading was the product of an illegal exchange of inside information, as opposed to savvy investing.

At trial, the evidence will show that this is exactly what happened here. The government, its allegations notwithstanding, will not be able to prove that Mr. Haghighat ever tipped anyone. Instead, what the evidence will show is that each of the Co-Defendants respected and admired Mr. Haghighat and took interest in companies that Mr. Haghighat founded or helped to grow and run (including Company-1), where Mr. Haghighat served as a Director); and at the relevant time, the market was *flooded* with public reporting encouraging investors to buy Company-1 securities. In fact, in the months leading up to the challenged trading in this action, at least *20 separate analyst reports*, from reputable investment banks like Guggenheim, Piper Sandler, and Wedbush, encouraged investors to "buy" Company-1, and predicted that the price of Company-1 shares would nearly double. In addition, during the same time period, Company-1 representatives attended multiple investor conferences, *publicly* touting the company and its flagship product—a treatment for a (then) largely untreatable degenerative kidney condition called IgA nephropathy (or Berger's disease)—and held countless meetings with individual investors. On those facts, the

1

more plausible inference is that interested investors with a connection to Mr. Haghighat rode the wave of public sentiment and profitably invested in a security that they were likely already following—*not* that Mr. Haghighat illegally spread word of a potential acquisition.

Still, given the standard at the charging stage, Mr. Haghighat recognizes that he must await trial to put the government to its proof and clear his name. Here, he requests only modest relief to which he is Constitutionally entitled.

*First*, the government should provide a bill of particulars to address a significant gap in the Indictment's allegations. Specifically, the Indictment makes the bare allegation that Mr. Haghighat "received" and "tipped others" with MNPI "regarding Company-2's acquisition of Company-1," ¶¶ 1, 14, but provides *zero* detail as to *what* information "regarding" the acquisition was allegedly exchanged. Was it that Company-2 requested a meeting with Company-1 to discuss an acquisition? Was it that Company-2 was interested in acquiring Company-1, generally? Was it the price per share Company-2 was offering (and, if so, which price)? Was it the likely time that the transaction would close? The Indictment leaves this question wide open, and, accordingly, disrupts Mr. Haghighat's ability to prepare a defense. This is not just a technical foot-fault – depending on the nature of *specific* MNPI alleged to have been exchanged, there may be, among other defenses, reason to doubt the materiality of the information or that the information could have been shared at the time alleged. Without that information, Mr. Haghighat cannot adequately prepare a defense—accordingly, a bill of particulars should be ordered.

*Second*, pursuant to the Supreme Court's decision in *Bruton v. United States*, 391 U.S. 123 (1968), and its progeny, the Court should not permit the jury to hear certain statements purportedly made by Co-Defendant Seyedfarbod "Fabio" Sabzevari which the government may seek to offer against Mr. Haghighat (assuming Mr. Sabzevari does not testify and therefore cannot be cross-

examined on the statements). The prejudice arising from these isolated statements – which the government will characterize as incriminating Mr. Haghighat – cannot be ameliorated by simply anonymizing Mr. Haghighat's name. As this is a "one tipper" case, *any* reference to a tip from another person will necessarily inculpate Mr. Haghighat and thereby violate his confrontation rights. *See Gray v. Maryland*, 523 U.S. 185, 192 (1998) ("redactions that simply replace a name with an obvious blank space or a word such as 'deleted' or a symbol or *other similarly obvious indications of alteration*" are insufficient to protect a defendant's confrontation rights) (emphasis added).

## MOTION FOR A BILL OF PARTICULARS

### Relevant Facts

This insider trading case is based on the theory that Mr. Haghighat shared *something* confidential about Company-2's plan, aspiration, and/or interest in acquiring Company-1 with others, who then traded on that information. But the Indictment's allegations as to the information exchanged are inappropriately generic. The Indictment states: (i) "Defendants [] made illegal profits by trading in securities of Company-1 based on material nonpublic information ('MNPI') regarding Company-2's acquisition of Company-1 (the 'Acquisition')" (¶ 1); and (ii) "[i]n violation of his duties, ROSS HAGHIGHAT traded Company-1 securities on the basis of that MNPI and tipped others to trade in Company-1 on the basis of that MNPI." ¶ 14. That is *all* the Indictment alleges as to the MNPI purportedly exchanged.

### Legal Standard

A bill of particulars, under Federal Rule of Criminal Procedure 7(f), is warranted when an indictment fails to "inform the defendant of the nature of the charges brought against him, to adequately prepare his defense, to avoid surprise during the trial and to protect him against a

second prosecution for an inadequately described offense." *United States v. Urban*, 404 F.3d 754, 771-72 (3d Cir. 2005); *see also United States v. Moyer*, 674 F.3d 192, 203 (3d Cir. 2012) ("'[W]hen the indictment itself is too vague and indefinite for such purposes,' a bill of particulars is warranted.") (citing *United States v. Addonizio*, 451 F.2d 49, 64 (3d Cir. 1971), *cert. denied*, 405 U.S. 936 (1972)).

While the decision to order a bill of particulars is left to the Court's sound discretion, the Federal Rules of Criminal Procedure encourage a "liberal attitude by the courts towards bills of particulars[.]" *See* Fed. R. Crim. P. 7 Advisory Com. Notes to 1966 Am. And the Third Circuit has held that a motion for bill of particulars "should be granted **whenever** an indictment's failure to provide factual or legal information significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial." *United States v. Rosa*, 891 F.2d 1063, 1066 (3d Cir. 1989) (emphasis added).

## **Argument**

Courts routinely order disclosure of, at the very least, the "who," "what," "where," and "when" of an alleged offense. *See, e.g.*, *United States v. Manetti*, 323 F. Supp. 683, 696 (D.N.J. 1971) (holding that a defendant is "entitled to be told the time and place of transactions giving rise to the charge"); *United States v. Korbe*, 2010 WL 2404384, at *5 (W.D. Pa. June 10, 2010) (granting in part a bill of particulars on the "general type, manner, means, and time frame of the alleged conspiratorial acts"); *United States v. Roque*, 2013 WL 2474686, at *6-7 (D.N.J. June 6, 2013) (ordering the government to particularize, among other things, "each act of unauthorized access" in connection with a Computer Fraud and Abuse Act claim, noting a concern "that the defendants—and [the court]—may not understand precisely what is being charged"); *United States*

4

*v. Farese*, 2023 WL 6795083, at *2 (D.N.J. Oct. 12, 2023) (granting in part a bill of particulars as to the identification of co-conspirators).

Here, the Indictment is defective as to the "what." While the Indictment vaguely characterizes the alleged tip as information regarding Company-2's acquisition of Company-1 (Indictment ¶¶ 1, 14, 18), Mr. Haghighat is left to guess as to what was supposedly exchanged. This bears directly on his ability to prepare a defense. The nature of the information allegedly misappropriated, including even generalized details, will change how Mr. Haghighat prepares and presents his defense. Among other potential considerations that Mr. Haghighat cannot address without more particulars as to the alleged MNPI involved, the government may not be able to prove materiality or – given the extensive market attention on Company-1 at the relevant time – may not be able to prove that the information was *nonpublic*.

Indeed, the Indictment sets forth a detailed "Acquisition Timeline," which reveals that certain MNPI which the government *might* be alleging that Mr. Haghighat wrongfully shared would not even have been available at certain relevant times. For example, the Indictment alleges that Company-2 did not convey its final, $40/share offer to Company-1 until May 26, 2023 (¶ 9), but the Indictment also alleges (or at least strongly implies) that an exchange of MNPI between Mr. Haghighat and Defendant Pearl occurred well *before* that date, on May 24 (¶ 35). If the government is alleging that the MNPI exchanged is related to the price offer that Company-2 made, these dates are critical. Even more strikingly, the Indictment suggests that an exchange of MNPI between Mr. Haghighat and Defendant Roberge occurred on May 7 and 8, but there is no allegation that *any* duty of confidentiality attached (at least not as to Company-2 specifically) until Company-1 employees executed a confidentiality agreement later—on May 9 and May 10, 2023. If the government is alleging that the MNPI exchanged was specific to Company-2, as opposed to

5

acquisition interest generally (again, we just don't know), this timing could prove crucial to Mr. Haghighat's defense. That is precisely why a bill of particulars should be ordered.

*United States v. Rajaratnam*, from the Southern District of New York, is instructive on this point. There, the court granted-in-part motions for further particulars made by two defendants in an insider trading case. *See* 2010 WL 2788168, at *1 (S.D.N.Y. July 13, 2010). Specifically, the court held that with respect to allegations that defendants engaged in insider trading based on information about the company's earnings announcement, defendants were entitled to identification of "the substance of the information provided" as to the announcement, and the "date(s) on which it was conveyed." *Id.* at *5. The court explained that because the "allegations about inside information" were "fact-intensive," the defendants were "entitled to some additional particulars about various of the substantive counts . . . and the conspiracy counts" to enable defendants to prepare for trial. *Id.* at *3.

So too here. As explained above, depending on the specific information that the government alleges Mr. Haghighat obtained and exchanged, a variety of defenses may be available. But, here, the scant detail with respect to the alleged MNPI does not provide sufficient notice of the tip provided. This raises the risk of prejudicial surprise, as Mr. Haghighat is unable to anticipate, investigate, and prepare a defense against purported evidence of an alleged tip that the Government has stretched. The Government should thus be compelled to particularize the alleged MNPI and when it was purportedly exchanged.

### MOTION TO SUPPRESS STATEMENTS OF FABIO SABZEVARI

The Court should suppress all statement made by Mr. Sabzevari during his March 4, 2025 interview that refer—explicitly or implicitly—to Mr. Haghighat and purport to inculpate him, as

6

no redaction can cure the constitutional defect given that Mr. Haghighat is the ***only*** Company-1 insider on trial.[1]

### Relevant Facts

On March 4, 2025, Mr. Sabzevari was interviewed by two United States Postal Inspectors at his California residence. *See* Ex. A (audio recording of Mr. Sabzevari's 2025.03.04 interview)]. Critically, during the interview, Mr. Sabzevari *denied* that Mr. Haghighat ever tipped him with MNPI regarding any planned or actual acquisition of Company-1. *See* Ex. A ███████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

Yet, we expect that the government will isolate certain other statements that Mr. Sabzevari made in his interview and offer them as purportedly inculpating Mr. Haghighat.

Specifically, in response to questions about Mr. Sabzevari's communications with Mr. Haghighat, Mr. Sabzevari stated ███████████████████████████████████ ██████████ Ex. A at 22:06. Then, when asked by the inspectors, ███████████ ████████████████████████████████████████████████████████████████ ████████████████████████ *See* Ex. A at 19:20. Finally, after repeated prompting by one of the inspectors, Mr. Sabzevari ██████████████████████████████████ █████████████████████████████████ *See* Ex. A at 27:20.

To be clear, these statements (in context) are not, in fact, inculpatory. They are completely unmoored in time and make zero reference to any unlawful exchange of MNPI. In addition, the recording is marred by poor quality throughout—multiple moments of inaudibility, overlapping

---

[1] This motion is made without prejudice to any later motions to suppress or motions in limine which Mr. Haghighat may make closer to trial.

7

background noise, and fragmented speech—rendering the statements therein even less probative of any wrongdoing. Still, for the reasons below, the government should not be permitted to offer these and other similar statements in the event that Mr. Sabzevari does not testify.

### Argument

In *Bruton v. United States*, the Supreme Court held that "incriminating extrajudicial statements of a co-defendant" who does not testify, but "who stands accused side-by-side with the defendant. . . at a joint trial" cannot be admitted without violating the incriminated defendant's rights under the Sixth Amendment's Confrontation Clause. *Bruton v. United States*, 391 U.S. 123, 136 (1968). Following *Bruton*, in *Gray v. Maryland*, the Court clarified that such statements "considered as a class" are "so prejudicial that limiting instructions cannot work." *Gray v. Maryland*, 523 U.S. 185, 192 (1998). Accordingly, "unless the prosecutor wishes to hold separate trials or to use separate juries or to abandon use of the confession, he must redact the confession" of the co-defendant. *Id.* Ultimately, the "important distinction" in determining whether a statement is inadmissible under *Bruton* and its progeny is whether the statement "expressly implicate[s]" the defendant and is thus "incriminating on its face[.]" *Id.* at 107; *see also United States v. Zuniga*, No. 2:18-CR-00224-BRM, 2021 U.S. Dist. LEXIS 70113, at *9 (D.N.J. Apr. 12, 2021) ("The test is whether the co-defendant's statement *directly and facially inculpates* another defendant.") (emphasis added).

Here, there can be no dispute that Mr. Sabzevari's statements fall within *Bruton*'s prohibition. Although there are certainly reasons why the statements should be discounted, and those statements alone do not make out all the elements of any crime, their admission nonetheless risks inviting the jury to draw an improper and prejudicial inference—that Mr. Haghighat encouraged Mr. Sabzevari to trade Company-1 securities while in possession of MNPI about

8

Company-1. And although Mr. Sabzevari made no such statement, if he does not testify, Mr. Haghighat will be denied the opportunity to cross-examine Mr. Sabzevari to clarify the context, challenge its ambiguity, and expose the limitations of those statements. This is precisely the danger *Bruton* sought to avoid: the government gaining the benefit of an untested, out-of-court statement that appears inculpatory when left unexplored. Accordingly, the only question for the Court is whether the prejudice to Mr. Haghighat can be cured by simply *anonymizing* Mr. Sabzevari's statements, or whether the statements must be suppressed altogether. The law and facts compel the latter answer.

To be sure, in *Richardson v. Marsh*, the Supreme Court held "that the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence. *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). But, in *Gray*, the Court limited that holding by ruling that "[r]edactions that simply replace a name with an obvious blank space or a word such as 'deleted' or a symbol or other similarly obvious indications of alteration, however, leave statements that, considered as a class, so closely resemble *Bruton*'s unredacted statements that, in our view, the law must require the same result [*i.e.*, suppression]." *Gray v. Maryland*, 523 U.S. at 192. As the Court explained, "a jury will often react similarly to an unredacted confession and a confession redacted in this way, for the jury will often realize that the confession refers specifically to the defendant. This is true even when the [government] does not blatantly link the defendant to the deleted name." *Id.* at 193. Moreover, "the obvious deletion may well call the jurors; attention specially to the removed name. By encouraging the jury to speculate about the reference, the redaction may overemphasize the importance of the confession's accusation—once the jurors work out the reference." *Id.*

9

That is precisely the case here. The very structure of the case renders any redaction completely ineffective. Mr. Haghighat's role is not peripheral, it is central and singular. He is the only Company-1 insider on trial and the only person alleged to have tipped anyone. The moment a juror hears that someone ████████████████████████████ the identity of that *someone* becomes obvious. And, the Court's fear in *Gray* that undue attention would be paid to Mr. Sabzevari's statements is also likely to be made manifest here – by such an obvious redaction, jurors may conclude that something is being kept from them, and may be inclined to "punish" Mr. Haghighat as a result. Redactions simply cannot cure the prejudice to Mr. Haghighat here.

Nor can the prejudice be ameliorated by the fact that Mr. Sabzevari's statements already omit Mr. Haghighat's name, referring to him only through general pronouns. *See e.g.*, Ex. A. at 22:06 (█████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

The jury will fill in the blank. The "he" in Mr. Sabzevari's statements can only be Mr. Haghighat. There is no mystery, no ambiguity, no inferential link required. Any attempt to redact further or disguise his identity—whether by referencing "another person" as in *Samia v. United States*, 599 U.S. 635, 143 S. Ct. 2004 (2023), or by inserting additional parties *not* at trial as in *Richardson v. Marsh*, 481 U.S. 200, 107 (1987)—does nothing to dull the clarity of the reference.

Accordingly, the only remedy to effectively protect Mr. Haghighat's confrontation rights (in the event that Mr. Sabzevari does not testify) is suppression of these statements.

Dated: August 8, 2025

Respectfully Submitted,

By: *s/ Adam Fee*
    Adam Fee
    Paul C. Gross
    **PAUL HASTINGS LLP**
    200 Park Avenue
    New York, NY 10166
    (212) 318-6000
    adamfee@paulhastings.com
    paulgross@paulhastings.com

*Attorneys for Defendant Rouzbeh "Ross" Haghighat*