# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

—————————————————————  :
UNITED STATES OF AMERICA          :
                                  :          Hon. Michael E. Farbiarz
     v.                        :
                                  :          Crim. No. 25-339
ROUZBEH "ROSS" HAGHIGHAT,         :
BEHROUZ "BRUCE" HAGHIGHAT,        :
KIRSTYN M. PEARL,                 :
SEYEDFARBOD "FABIO" SABZEVARI,    :
JAMES D. ROBERGE                  :
—————————————————————

**United States' Response in Opposition to Defendant Rouzbeh "Ross" Haghighat's Pretrial Motions (ECF No. 83)**

LORINDA I. LARYEA
Acting Chief
Fraud Section, Criminal Division
U.S. Department of Justice

JOHN J. LIOLOS
Trial Attorney
Fraud Section, Criminal Division
United States Department of Justice
1400 New York Avenue, NW
Washington, DC 20005
John.Liolos@usdoj.gov
(202) 768-2246

# Table of Contents

The Indictment's Allegations ................................................................................................1

Argument ...............................................................................................................................5

   I.   The detailed Indictment sufficiently apprises the Defendant of the charges such that a bill of particulars is unwarranted. ........................................................................................5

      A.  Legal Standard................................................................................................5

      B.  The Court should deny the Defendant's Motion because the Indictment and discovery render a bill of particulars unnecessary. ..........................................................7

   II.  The Court should deny the *Bruton* motion because the at-issue statements can be sufficiently anonymized in accordance with Supreme Court precedent..........................................12

      A.  Relevant Background.....................................................................................12

      B.  Bruton prohibits the admission of only "directly accusatory" incriminating statements of non-testifying co-Defendants. ...........................................................13

      C.  The Court should deny the Motion because the statements at issue may be anonymized so they are not "directly accusatory" to accord with *Bruton* and its progeny......................14

Conclusion ...........................................................................................................................16

# Table of Authorities

*Bruton v. United States,*
  391 U.S. 123 (1968) ................................................................................ *passim*

*Crawford v. Washington,*
  541 U.S. 36 (2004) ...................................................................................... 13

*Gray v. Maryland,*
  523 U.S. 185 (1998) ..................................................................................... 13

*Richardson v. Marsh,*
  481 U.S. 200 (1987) ................................................................................. 13, 14

*Samia v. United States,*
  599 U.S. 635 (2023) ............................................................................... *passim*

*United States v. Bellucci,*
  No. 23-cv-083, 2024 WL 2277832 (M.D. Pa. May 20, 2024) ........................ 15

*United States v. Blakstad,*
  No. 19-cr-486, 2020 WL 5992347 (S.D.N.Y. Oct 9, 2020) ............... 7–9, 11, 12

*United States v. Buyer,*
  No. 22-cr-397, 2023 WL 1381970 (S.D.N.Y. Jan 31, 2023) ........................ 7–9

*United States v. Debrow,*
  346 U.S. 374 (1953) ....................................................................................... 5

*United States v. Delahanty,*
  No. 21-cr-872, 2022 WL 4237143 (D.N.J. Sept. 13, 2022) ...................... 10–11

*United States v. Delle Donna,*
  552 F. Supp. 2d 475 (D.N.J. 2008) ................................................................. 6

*United States v. Donna,*
  366 Fed. Appx. 441 (3d Cir. 2010) ................................................................. 6

*United States v. Dupree,*
  No. 10-cr-627, 2011 WL 5976006 (E.D.N.Y. Nov. 29, 2011) .......................... 6

*United States v. Edwards,*
  No. 2:20-cr-572, 2024 WL 1620311 (D.N.J. Apr. 15, 2024) ..................... 10–11

*United States v. Fenner,*
  142 F.4th 510 (7th Cir. 2025) ...................................................................... 15

*United States v. Giffen,*
  379 F. Supp. 2d 337 (S.D.N.Y. 2004) ............................................................. 6

*United States v. Griffith,*
  No. 20-cr-15, 2020 WL 4369650 (S.D.N.Y. July 29, 2020) ............................. 6

*United States v. Hendricks,*
    395 F.3d 173 (3d Cir. 2005) .................................................................................... 13

*United States v. Jaghama,*
    No. 23-cr-157-02, 2023 WL 8237273 (E.D. Pa. Nov. 28, 2023) ................................... 15

*United States v. Kemp,*
    500 F.3d 257 (3d Cir. 2007) ..................................................................................... 6

*United States v. Martoma,*
    No. 12-cr-973, 2013 WL 2435082 (S.D.N.Y. June 5, 2013) ............................................ 8

*United States v. Moss,*
    No. 19-cr-701, 2021 WL 1196451 (D.N.J. Mar. 30, 2021) ........................................... 7

*United States v. Moyer,*
    674 F.3d 192 (3d Cir. 2012) ................................................................................. 6–7

*United States v. Pinto-Thomaz,*
    352 F. Supp. 3d 287 (S.D.N.Y. 2018) ............................................................... 6–8, 11

*United States v. Rajaratnam,*
    No. 09-cr-1184, 2010 WL 2788168 (S.D.N.Y. July 13, 2010) ................................... 9, 11

*United States v. Resendiz-Ponce,*
    549 U.S. 102 (2007) .............................................................................................. 5

*United States v. Scrushy,*
    No. 03-cr-530, 2004 WL 483264 (N.D. Ala. Mar. 3, 2004) ............................................ 6

*United States v. Shvartsman,*
    722 F. Supp. 3d 276 (S.D.N.Y. Mar. 20, 2024) ................................................... 7, 11

*United States v. Slawson,*
    No. 1:14-cr-00186, 2014 WL 5804191 (N.D. Ga. Nov. 7, 2014) ............................... 7–10

*United States v. Stewart,*
    2016 U.S. Dist. LEXIS 202576, *25, 28–31 (S.D.N.Y. Jan. 19, 2016) .......................... 7, 8

*United States v. Syed,*
    No. 22-cr-818, 2025 WL 635300 (D.N.J. Feb. 27, 2025) .............................................. 6

*United States v. Urban,*
    404 F.3d 754 (3d Cir. 2005) ................................................................................. 7, 9

*United States v. Zaklama,*
    No. 23-cr-527, 2024 WL 4755378 (D.N.J. Nov. 12, 2024) ........................................... 7

*Williams v. Superintendent Greene SCI,*
    112 F.4th 155 (3d Cir. 2024) .................................................................................. 13

**Rule**

Fed. R. Crim. P. 7 ............................................................................................................... 5–6

The United States, through undersigned counsel, respectfully responds to Defendant Rouzbeh "Ross" Haghighat's Pretrial Motions. (ECF No. 83 ("Mot.").) The Court should deny the Defendant's motion for a bill of particulars because the detailed Indictment, coupled with the United States' provision of significant, organized discovery (including the majority of it before arraignment), render a bill of particulars unnecessary here.[1] The Court should deny the Defendant's motion to exclude evidence under *Bruton v. United States*, 391 U.S. 123 (1968), because the evidence at issue can be sufficiently anonymized consistent with Supreme Court precedent, including *Samia v. United States*, 599 U.S. 635 (2023).

### The Indictment's Allegations

In this case, the detailed 35-page Indictment alleges an insider trading scheme in which Rouzbeh "Ross" Haghighat and four co-Defendants "made illegal profits by trading in Company-1 securities based on material nonpublic information ('MNPI') regarding Company-2's acquisition of Company-1 (the 'Acquisition')." (Indict. para. 1. (ECF No. 10).)  The Defendants allegedly did so by "exploit[ing] MNPI they possessed in violation of duties owed in order to execute profitable and timely trades in Company-1 securities." (*Id.*)

The Indictment alleges relevant information about the Defendants, such as the fact that Ross Haghighat "was a Director on the Board of Directors of Company-1" and that "[i]n his position as a Director, Ross Haghighat obtained MNPI about Company-1's merger with Company-2." (*Id.* para. 2(a).)

The Indictment includes a detailed "Acquisition Timeline," alleging facts demonstrating Ross Haghighat possessed significant MNPI and the approximate dates on which he learned the MNPI as

---

[1] The United States produced the bulk of discovery in this case to Defendant Ross Haghighat on May 30, 2025, eight days after indictment and prior to arraignment, and made timely (much smaller) subsequent productions thereafter. (*See* ECF Nos. 10, 51.) Indeed, at the June 16, 2025 arraignment, Defendant Haghighat's counsel remarked at the significant volume of discovery then already provided. (*See* ECF No. 78.) That discovery is electronically searchable and was provided with an organized index.

a Director on the Board. (*See id.* paras. 3–13.) That Timeline begins with the MNPI of Company-2's May 4, 2023, initial proposal to acquire Company-1 for $32 per share in cash, an approximately 67% premium to Company-1 stock's closing price the prior day of $19.13 per share. (*Id.* para. 3.) Ross Haghighat allegedly learned of that offer at least as of May 5, 2023 and May 6, 2023, when "Company-1's Board, including Ross Haghighat, and senior management met to discuss Company-2's proposal and met with financial advisors to evaluate that proposal." (*Id.* para. 4.) Notably, the Indictment establishes that those meetings where the offer was discussed occurred prior to any charged trading in Company-1's stock by any of the Defendants. (*See generally id.*) For example, the Indictment later alleges that, on or about May 7, 2023, Defendants Ross Haghighat and Roberge met in Roberge's backyard for "beer and dip," around which time Roberge transferred approximately $60,000 to his brokerage account and proceeded to place orders to buy Company-1 stock that day (a Sunday when markets were closed) and the following day. (*Id.* paras. 65–67.)

The Acquisition Timeline continues on to allege additional MNPI regarding the Acquisition that Ross Haghighat learned at various later points in time. For example,

> On or about May 22, 2023, Company-2 indicated it would increase its proposed all-cash purchase price to $36.00 per share. Company-1 senior management discussed the revised proposal with the Board, including Ross Haghighat. Later on or about May 22, 2023, Company-1's Board including Ross Haghighat, directed its financial advisor to respond to Company-2 that Company-1 would be willing to proceed at a price of $40.00 per share and a contingent value right that would pay $4.00 per share with certain conditions.

(*Id.* para. 8.) Further, "[o]n or about May 26, 2023, Company-2 informed Company-1 that Company-2 would be willing to increase the proposed purchase price to $40.00 per share with a contingent value right of $4.00 per share with certain conditions," an offer which Ross Haghighat and the Board discussed that same day and determined to proceed on an exclusive negotiating basis until on or about June 12, 2023. (*Id.* para. 9.) "On or about May 27, 2023, Company-2 contacted Company-1 and indicated Company-2 would proceed with the acquisition under Company-1's proposal." (*Id.* para. 10.)

The Indictment includes subsections with allegations corresponding to each of Ross Haghighat's co-Defendants that set out significant particulars. (*See generally id.*) Those particulars include alleging numerous communications between Ross Haghighat and the other Defendants during the period of the Acquisition Timeline establishing Ross Haghighat's knowledge of MNPI at various points in time. (*See id.*) The communications between Ross Haghighat and the co-Defendants are generally followed thereafter by the Defendants' trading in Company-1 securities. (*See id.*)

For example, on or about May 26, 2023, after Ross Haghighat allegedly possessed significant MNPI about the Acquisition, Defendant Bruce Haghighat and Ross Haghighat exchanged several communications, including a call followed by a text in which Bruce Haghighat asked, "What is the stick [sic] symbol?" (*Id.* para. 24.) Ross Haghighat responded by WhatsApp message with Company-1's ticker symbol. (*Id.*) Bruce Haghighat then explained: "[Advisor-1] called me and he needs 3 days to set up for options. I am just going to buy it direct. If you changed your mind, let me know in the next hour." (*Id.*) That same day, Bruce Haghighat had also told his financial advisor that "time is of the essence" for a transaction he wanted to make, and later asked, "did you put the trade in . . . don't see it on the account. I am trying to buy it today." (*Id.* paras. 23, 25.) Also that day, 2,000 shares of Company-1 stock were purchased in a trust account for which Bruce Haghighat was the trustee and Ross Haghighat was the grantor. (*Id.* paras. 25.)

Similarly, as to Defendants Haghighat and Pearl, the Indictment alleges that Ross Haghighat, after attending the various Board meetings and learning the MNPI set forth in the Acquisition Timeline to that point, rode with Pearl from New York to Massachusetts on or about May 24, 2023. (*Id.* para. 35.) The next day, May 25, 2023, Pearl visited a webpage displaying options prices for Company-1. (*Id.* paras. 35–36.) The next day, May 26, 2023, Pearl allegedly attempted to buy Company-1 call options but the orders were rejected for insufficient funds. (*Id.*) That same day, Pearl allegedly deposited approximately $5,000 by ATM into her bank account, which she then transferred

to her brokerage account. (*Id.* para. 37). On or about June 5, 2023, Pearl allegedly purchased Company-1 call options expiring on or about June 16, 2023, for a total of approximately $5,505. (*Id.* para. 38.) On or about June 12, 2023, the Acquisition Announcement occurred at approximately 1:00 a.m. ET. (*Id.* para. 39.) Later that day, Ross Haghighat and Pearl allegedly had a text exchange where Ross Haghighat asked, "[d]id you get it done?," to which Pearl responded, "[c]hunks/game plan finalized – excited to show you when you get home[.]" (*Id.* para. 40.) That same day, Pearl began selling her Company-1 options in chunks, which she finished selling on or about June 14, 2023, for a total profit of approximately $114,081, which Ross Haghighat and Pearl then allegedly split. (*See id.* paras. 41–51.)

Similarly, the Indictment alleges that Ross Haghighat and Defendant Sabzevari exchanged approximately twelve text messages on or about May 25, 2023, "approximately three days after Company-2 indicated it would increase its proposed all-cash purchase price to $36.00 per share . . . ." (*Id.* para. 53.) The following day, Sabzevari allegedly engaged in several calls with his broker attempting "to move [his] money from [his] bank account to [his] . . . investment account **today** and have it settle **today**," including asking if he could "put like $10,000 cash into an ATM" and wondering "how much money I could shove into the ATM." (*Id.* para 54.) He also allegedly asked his broker, "[i]f I wanted to do options trading . . . do I have to wait until that money gets settled before I can do options trading or can I begin now? Because I literally just sold [a stock]." (*Id.*) By the end of that trading day, Sabzevari had allegedly purchased approximately 102 Company-1 call options. (*Id.* para. 55.) In the ensuing days, Sabzevari allegedly purchased more Company-1 stock and options and had additional contacts with Ross Haghighat (*Id.* paras. 56–61.) Shortly after the Acquisition Announcement, Sabzevari sold his Company-1 holdings for significant profit. (*Id.* para. 62.)

Similarly, regarding Roberge, in addition to his trading after talking with Ross Haghighat in his backyard on May 7, Roberge and Ross Haghighat talked again, including allegedly in a phone call of more than six minutes on or about May 24, 2023. (*Id.* para 73.) On May 30 and again on June 5,

Roberge purchased additional Company-1 stock totaling approximately 1,100 additional shares. (*See id.* paras. 74–75.)

Finally, the Indictment explicitly alleges in the statutory language that the Defendants' charged trading in Company-1 securities was on the basis of MNPI "Ross Haghighat obtained regarding a proposed merger between Company-1 and Company-2 . . . ." (*Id.* para 81.)

Argument

**I.    The detailed Indictment and discovery sufficiently apprise the Defendant of the charges such that a bill of particulars is unwarranted.**

The Court should deny the Defendant's motion for a bill of particulars because the detailed Indictment and discovery already provided are more than sufficient to apprise the Defendant of what he must be prepared to meet at trial and allow him to plead double jeopardy. The Defendant seeks inappropriate early discovery and/or constraint of the United States' trial evidence. The Court should reject that effort because it is inconsistent with the law.

**A.  Legal Standard**

Federal Rule of Criminal Procedure 7(c) requires that an indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). The Federal Rules "were designed to eliminate technicalities in criminal pleadings and are to be construed to secure simplicity in procedure." *United States v. Resendiz-Ponce*, 549 U.S. 102, 110 (2007) (quoting *United States v. Debrow*, 346 U.S. 374, 376 (1953) (internal citations omitted)). "[N]o greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution." *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007) (quotations and citations omitted).

"[W]hen the indictment itself is too vague and indefinite" to "adequately apprise the defendant of what he must be prepared to meet[,]" Rule 7(f) allows defendants, under certain circumstances, to

move for a bill of particulars. *See United States v. Moyer*, 674 F.3d 192, 203 (3d Cir. 2012). "The purpose of a bill of particulars is to supplement the allegations in the indictment where necessary to (1) enable the defendant to prepare his defense, (2) avoid unfair surprise to the defendant at trial, and (3) preclude a second prosecution of the same offense." *United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 301–02 (S.D.N.Y. 2018) (quotations omitted) (rejecting argument that bill of particulars was necessary "to particularize exactly what material nonpublic information" was conveyed between defendants); *see also United States v. Delle Donna*, 552 F. Supp. 2d 475, 497–98 (D.N.J. 2008) (explaining the same purposes for a bill of particulars), *aff'd in part sub nom.*, 366 F. App'x 441 (3d Cir. 2010).

"A bill of particulars is appropriate when there is a need, not where it is merely a useful means for a defendant to acquire more detailed pre-trial discovery." *United States v. Griffith*, No. 20-cr-15, 2020 WL 4369650, at *3 (S.D.N.Y. July 29, 2020) (cleaned up). "[T]here is a difference between being surprised by the charge and being surprised by the evidence supporting a charge. The function of the bill of particulars is to reduce surprise at the *charge*, that is, to enable the defendant to identify what he is alleged to have done in violation of law. It is not to eliminate surprise with respect to evidence offered in support of a charge that is clearly understood by the defendant." *United States v. Scrushy*, No. 03-cr-530, 2004 WL 483264, at *9 n.5 (N.D. Ala. Mar. 3, 2004).

"The ultimate test in deciding whether a bill of particulars should be ordered is whether the information sought is necessary, as opposed to helpful, in preparing a defense." *United States v. Giffen*, 379 F. Supp. 2d 337, 346 (S.D.N.Y. 2004); *see also United States v. Dupree*, No. 10-cr-627, 2011 WL 5976006, at *6 (E.D.N.Y. Nov. 29, 2011) ("[T]he proper inquiry is not whether the requested information would be helpful to the defense, but rather whether the information is *necessary* to the defense."). "Ultimately, Rule 7(f) does not require the United States Attorney to furnish a three-dimensional colored motion picture of the prosecution's proof prior to trial." *United States v. Syed*, No. 22-cr-818, 2025 WL 635300, at *11 (D.N.J. Feb. 27, 2025) (cleaned up). "As such, a court should

not grant a motion for a bill of particulars if its only use is to secure evidence pretrial." *United States v. Zaklama*, No. 23-cr-527, 2024 WL 4755378, at *4 (D.N.J. Nov. 12, 2024).

"[A]ccess to discovery weakens the case for a bill of particulars." *United States v. Moss*, No. 19-cr-701, 2021 WL 1196451, at *7 (D.N.J. Mar. 30, 2021); *see also United States v. Urban*, 404 F.3d 754, 772 (3d Cir. 2005).

**B. The Court should deny the Defendant's Motion because the Indictment and discovery render a bill of particulars unnecessary.**

The Court should deny the Defendants' motions for bills of particulars seeking "the precise material, non-public information allegedly provided" by Ross Haghighat to the other Defendants. *See United States v. Slawson*, No. 1:14-cr-00186, 2014 WL 5804191, at *13 (N.D. Ga. Nov. 7, 2014) (denying such a motion). The 35-page Indictment and significant discovery adequately apprise the Defendant of the charges to prepare his trial defense and allow him to plead double jeopardy. Nothing more is required. *E.g.*, *Moyer*, 674 F.3d at 203.

Courts in insider trading cases routinely deny motions for bills of particulars seeking precisely the same information—the content of specific MNPI—which the Defendant seeks here. *See, e.g.*, *United States v. Shvartsman*, 722 F. Supp. 3d 276, 328 (S.D.N.Y. Mar. 20, 2024) (rejecting, in insider trading case, defense motion for further particulars about "the material nonpublic information that the defendants are alleged to have shared or traded on"); *United States v. Buyer*, No. 22-cr-397, 2023 WL 1381970, at *3 (S.D.N.Y. Jan 31, 2023) (denying motion for bill of particulars "to particularize exactly what material nonpublic information was conveyed between defendants"); *United States v. Blakstad*, No. 19-cr-486, 2020 WL 5992347, at *10 (S.D.N.Y. Oct 9, 2020) (denying motion for bill of particulars seeking details of MNPI in case with one tipster, one company, and four earnings releases spurring unlawful transactions); *Pinto-Thomaz*, 352 F. Supp. 3d at 302; *United States v. Stewart*, No. 15-cr-0287, 2016 U.S. Dist. LEXIS 202576, at *25, 28–31 (S.D.N.Y. Jan. 19, 2016) (denying motion for

bill of particulars where tipster charged with providing information in advance of five sets of transactions); *Slawson*, 2014 WL 5804191, at *13 (rejecting request to particularize the precise MNPI provided, finding the requests sought "evidentiary detail . . . that is not appropriate in a bill of particulars"); *United States v. Martoma*, No. 12-cr-973, 2013 WL 2435082, at *3–6. (S.D.N.Y. June 5, 2013) (denying request to particularize "the specific information" defendant allegedly obtained and "the specific dates on which such information is alleged to have been shared").

For example, in *Pinto-Thomaz*, Judge Rakoff denied a motion for a bill of particulars "to particularize exactly what material nonpublic information" the tipper defendant conveyed to a tippee defendant. 352 F. Supp. 3d at 302. Just like the Indictment here, that "Indictment clearly describe[d] the overall nature of the information here in issue, at what time and in what capacity [tipper defendant] acquired this information, [tipper defendant's] subsequent contact with [tippee], and [tippee's] trades thereafter." *Id.* The court found that information, along with the significant discovery provided, sufficient to deny the motion for further particulars. *Id.*

The *Pinto-Thomaz* court further rejected that defendant's request for the government to "disclose now whatever inferences it has drawn regarding what [material nonpublic information] was allegedly conveyed." *Id.* at 303. As Judge Rakoff explained, "[t]his is a demand for exactly what a bill of particulars is specifically barred from doing: compelling the government to disclose the manner in which it will attempt to prove the charges, the precise manner in which the defendant committed the crime charged, or a preview of the Government's evidence or legal theories." *Id.* (cleaned up). Thus, the court found "that defendants have more than sufficient information concerning the material nonpublic information allegedly disclosed to prepare for trial," and denied the motion. *Id.* Other courts rule similarly. *See, e.g.*, *Buyer*, 2023 WL 1381970, at 3 (denying motion to particularize MNPI where "[t]he Indictment clearly describes the nature of the [MNPI] at issue, and at what time and in what

capacity [the defendant] acquired this inside information before trading"); *Slawson*, 2014 WL 5804191, at *14.

This Court should do the same. The Indictment's allegations, which must be taken as true, state clearly that the Defendants "made illegal profits by trading in Company-1 securities based on material nonpublic information ('MNPI') regarding Company-2's acquisition of Company-1 (the 'Acquisition')." (Indict. para. 1.) The Indictment supplies significant detail about the specifics of MNPI Ross Haghighat knew and approximately when he knew it. (*See id.* paras. 3–13.) The Indictment also supplies significant details about when Ross Haghighat communicated with his co-Defendants while in possession of that MNPI, and how and when the co-Defendants (and Ross Haghighat himself) proceeded to trade in Company-1 securities. (*See id.* paras. 14–83.)

Further, what particulars the United States has at present beyond the Indictment have been supplied to the Defendant in organized, electronically searchable discovery with a detailed index. *See, e.g.*, *Urban*, 404 F.3d at 772 ("Appellants had access through discovery to the documents and witness statements relied upon by the government in construing its case, including trial evidence reflecting the dates of payments to Appellants and the approximate amount of those payments. This access to discovery further wakens the case for a bill of particulars here."); *Blakstad*, 2020 WL 55992347, at *11 (explaining even where discovery is voluminous, defense has other tools like organized discovery, search warrant affidavits, and defendants' communications). This information is more than sufficient for the Defendant to understand the charges he faces, prepare for trial, and plead double jeopardy against new charges of tipping these co-Defendants about the Company-1 Acquisition followed by their trading in Company-1 securities specified in detail in the Indictment.

Furthermore, the United States "need not provide particulars where it has none." *United States v. Rajaratnam*, No. 09-cr-1184, 2010 WL 2788168, at *9 (S.D.N.Y. July 13, 2010). Here, many of the particulars the Defendant seeks are likely known only to the Defendants involved in the conversations

at issue, such as Ross Haghighat's and Roberge's backyard meeting over "beer and dip" followed by large cash transfers and stock orders on a Sunday afternoon (Indict. para 65–66); Ross Haghighat's and Pearl's drive from New York to Boston in the midst of intensive merger negotiations followed by Company-1 option price searches and attempted option purchases (*id.* paras. 35–37); and Ross Haghighat's and Bruce Haghighat's phone call shortly before Ross Haghighat sent Bruce Haghighat the Company-1 ticker symbol by encrypted WhatsApp message followed by trading in Company-1 stock (*id.* para. 24–25). Ross Haghighat could hardly establish he was surprised at trial should details of the conversations he was in become known and introduced. *See Slawson*, 2014 WL 5804191, at *14 ("In a case where the evidence being sought by a bill of particulars consists of activities which a defendant participated or witnessed, the defendant could hardly have been surprised by the government's proof at trial." (collecting cases) (cleaned up)).

The Defendant's arguments to the contrary are unavailing and demonstrate the Motion is an improper attempt to obtain early discovery of the United States' trial case. Indeed, the Defendant's own brief demonstrates the Indictment provides sufficient information to prepare his defense, where he uses the Indictment's Acquisition Timeline, along with the supplied dates of communications with co-Defendants followed by trading, to infer MNPI conveyed in those communications, which obviously must happen chronologically and subsequent to the Defendant learning MNPI. (*See* Mot. at 5–6.) As displayed by his Motion, the Defendant is more than capable of using the Indictment, coupled with discovery, to make any appropriate arguments (including those mentioned as to materiality and publicity), starting with Company-2's initial offer on May 4, 2023. Here, the "Defendant's request for more information regarding specific allegations in the Indictment is an improper use of a bill of particulars as a discovery vehicle—a bill of particulars is not meant to provide the Defendant with specific evidence of the particular transactions alleged in the Indictment." *United States v. Edwards*, No. 2:20-cr-572, 2024 WL 1620311, at *5 (D.N.J. Apr. 15, 2024); *see also United States*

*v. Delahanty*, No. 21-cr-872, 2022 WL 4237143, at *3 (D.N.J. Sept. 13, 2022) (denying defendants motion for bill of particulars because "[d]efendants understand the conduct for which they stand trial and may prepare their defenses accordingly" and explaining "a bill of particulars is not supposed to furnish to the defense each and every document that provides additional information about a criminal charge" (cleaned up)).

The Defendant's Motion principally relies on a single case, *United States v. Rajaratnam*, which is very different from the Indictment here. No. 09-cr-1184, 2010 WL 2788168, at *1 (S.D.N.Y. July 13, 2010). There, the court granted in-part a motion for further particulars where the allegations "spanne[ed] six years and involve[ed] dozens of stocks, dozens of co-conspirators, and a total of seven conspiracies charged in this indictment." *Id.* at *2. That case is clearly distinguishable from this case, which concerns a single company in a discrete several-month time period focused on a single event: the Acquisition. *See id.*

Numerous courts denying motions for bills of particulars in similar circumstances have distinguished *Rajaratnam* as an outlier based on its complexity. *See, e.g.*, *Shvartsman*, 722 F. Supp. 3d at 329; *Blakstad*, 2020 WL 5992347, at *10 (distinguishing *Rajaratnam* as complex where case was "quite simple" involving "one insider tipster, one company, and four earnings releases that spurred allegedly unlawful transactions"). For example, in *Pinto-Thomaz*, Judge Rakoff distinguished *Rajaratnam* on that basis, explaining "the instant case does not involve such complexities: it charges insider trading of one specific stock based on [MNPI] exchanged during a specified period of time between" the defendants. 352 F. Supp. 3d at 302. That fact-pattern is a mirror image of this case, and this Court should do the same. *Id.*

In short, the Indictment supplies particulars that are, along with discovery, more than sufficient for the Defendant to prepare for trial, avoid prejudicial surprise as to the charges, and plead double jeopardy, which is all the law requires at this stage. "Given the single source of inside

information and the limited number of allegedly unlawful transactions, additional information beyond that provided in discovery and the indictments is not necessary for" the Defendant's "defense." *See Blakstad*, 2020 WL 5992347, at *10. Accordingly, the Court should deny the Defendant's Motion for a bill of particulars.

## II. The Court should deny the *Bruton* motion because the at-issue statements can be sufficiently anonymized in accordance with Supreme Court precedent.

The Court should deny the Defendant's Motion to suppress evidence based on *Bruton v. United States*, 391 U.S. 123 (1968), because the statements at issue can be sufficiently anonymized to accord with Supreme Court precedent allowing such statements.

### A. Relevant Background

On March 4, 2025, two U.S. Postal Inspectors interviewed Defendant Sabzevari at his apartment in Los Angeles in a recorded interview. (*See* Def.'s Ex. A.) During the interview, Defendant Sabzevari made numerous admissions to the charged crimes. (*See id.*)

Many of the admissions on the tape expressly implicate Defendant Ross Haghighat. (*E.g.*, ECF No. 81, Ex. 2 at 35:13–36:19[2] ("███████████████████████████████████ ██████████████████████████████████████████"). Many other admissions simply refer to an anonymous "he." (*E.g.*, ECF No. 81, Ex. 2 at 22:52–23:48 ("███████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████

---

[2] The Defendant appears to have selected a lower-quality recording of the interview as the exhibit to his motion. The United States directs the Court to the version submitted as Exhibit 2 to Defendant Sabzevari's Pretrial Motions (ECF No. 81), which is of higher quality and to which these citations conform.

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████

The United States anticipates preparing clips of the tape with such anonymous references for introduction into evidence at trial.

### B. *Bruton* prohibits the admission of only "directly accusatory" incriminating statements of non-testifying co-Defendants.

"Ordinarily, a witness whose testimony is introduced at a joint trial is not considered to be a witness 'against' a defendant if the jury is instructed to consider that testimony only against a codefendant," in accordance with the "almost invariable assumption of the law that jurors follow their instructions." *Richardson v. Marsh*, 481 U.S. 200, 206 (1987). The *Bruton* rule is a "'narrow exception'" to that assumption. *Samia v. United States*, 599 U.S. 635, 647 (2023) (quoting *Bruton v. United States*, 391 U.S. 123 (1968)). Specifically, *Bruton* prohibits the admission of a non-testifying codefendant's confession that directly implicates another defendant in a joint trial.[3] *See id.*

But "the *Bruton* rule applies only to 'directly accusatory' incriminating statements, as distinct from those that do 'not refer directly to the defendant' and 'bec[o]me incriminating only when linked with the evidence introduced later at trial.'" *Id.* at 647 (quoting *Gray v. Maryland*, 523 U.S. 185, 194–96 (1998)). Thus, in *Samia*, the Supreme Court recently affirmed the admission of a version of a confession that anonymized the specific reference to the defendant, did not otherwise directly inculpate the defendant without reference to other evidence in the case, and was subject to a limiting instruction. *Samia v*, 599 U.S. at 655 ("The Confrontation Clause ensures that defendants have the

---

[3] The *Bruton* rule only applies to "testimonial" statements. *See, e.g., Crawford v. Washington*, 541 U.S. 36, 53–54 (2004); *United States v. Hendricks*, 395 F.3d 173, 179 (3d Cir. 2005). The Third Circuit has explained that "[a]ccomplice confessions to the authorities . . . are among the statements the Supreme Court has enumerated as 'plainly testimonial.'" *Williams v. Superintendent Greene SCI*, 112 F.4th 155, 165 (3d Cir. 2024) (quoting *Crawford*, 541 U.S. at 63–64).

opportunity to confront witnesses against them, but it does not provide a freestanding guarantee against the risk of potential prejudice that may arise inferentially in a joint trial."); *see also Richardson*, at 208–09 ("[E]vidence requiring linkage differs from evidence incriminating on its face . . . . If limited to facially incriminating confessions, *Bruton* can be complied with by redaction—a possibility suggested in that opinion itself."); *Bruton*, 391 U.S. at 134 n.10. So anonymized, such statements "fall outside the narrow exception [*Bruton*] created." *Samia*, 599 U.S. at 652 (citing *Richardson*, 481 U.S. at 208).

## C. The Court should deny the Motion because the statements at issue may be anonymized so they are not "directly accusatory" to accord with *Bruton* and its progeny.

The Court should deny the Defendant's motion because the statements in question can be sufficiently anonymized and accompanied by limiting instructions in accordance with *Samia*, *Bruton* and its progeny. In *Samia*, an agent testified about a non-testifying co-defendant's confession where the co-defendant admitted he was in the van where the defendant shot the victim. 599 U.S. at 641–42. Rather than stating the defendant's name, the agent said the co-defendant admitted that "the other person," in the van shot the victim. *See id.* Because that did not inculpate the defendant without reference to other evidence and the court provided a limiting instruction, the Supreme Court found admission of the statement consistent with *Bruton* and its progeny. *Id.* at 654–55.

So too here. Admitting clips of the interview in which Defendant Sabzevari refers to an anonymous "he" in his admissions are not "directly accusatory" as to Ross Haghighat and become so "only when linked" with other evidence in the case. *See id.* at 647. Thus, with a proper limiting instruction, such evidence is admissible under *Samia*, *Bruton*, and its progeny. *See id.*

The Defendant's suggestion that clips referring only to an anonymous "he" are not admissible runs counter to *Samia*. *See id.* Even the Defendant believes the statements "are completely unmoored in time." (Mot. at 7.) The statement at issue in *Samia* was clearly linked in place (in the van where the shooting happened) and time (at the time of the shooting). *See Samia*, 599 U.S. at 647. If that

anonymous statement from the very time and place of the crime was not "directly accusatory," statements in this case the Defendant agrees are "unmoored in time" certainly can be sufficiently anonymized here. *See id.* The fact that the statements are "unmoored in time" further demonstrates that the jury would need to rely on other evidence to supply an inference that Ross Haghighat may be the tipper and, under *Samia* thus, "fall outside the narrow exception *Bruton* created." *See, e.g., Samia,* 599 U.S. at 653 (cleaned up); *see also United States v. Jaghama,* No. 23-cr-157-02, 2023 WL 8237273, at *2–4 (E.D. Pa. Nov. 28, 2023) (rejecting defendant's *Bruton* argument that redactions and a limiting instructions were insufficient even where defendant argued "the context of this case would make it obvious to the jury who the 'another person' was" (quotations and citation omitted)).

The Defendant also argues the statements at issue are not even confessions and that the "statements alone do not make out all the elements of any crime," rendering them even further afield from *Bruton's* prohibitions. *Compare* (Mot. at 8), *with United States v. Fenner,* 142 F.4th 510, 520–21 (7th Cir. 2025) (explaining that "an inculpatory statement that fell short of full-blown confession to the crimes with which the nontestifying defendant was charged and that was consistent with the codefendant's theory of defense was not powerfully incriminating" such that *Bruton* did not bar the statement (cleaned up) (collecting cases)).

And, of course, the Court can provide a proper limiting instruction in connection with any such evidence. *See, e.g., Samia,* 599 U.S. at 653. Thus, the statements fall squarely under *Samia,* outside of *Bruton*'s narrow exception, and the Court should deny the Defendant's Motion to Exclude Evidence.[4] *See id.*

---

[4] The United States will include with its trial exhibits the clips it proposes to offer in accordance with *Samia.* Should the Court be inclined to grant any part of the motion, the United States respectfully requests the Court deny the motion without prejudice or defer ruling on this issue until the actual exhibits with the at-issue statements are prepared in accordance with the Scheduling Order (ECF No. 64). *See, e.g., United States v. Bellucci,* No. 23-cv-083, 2024 WL 2277832, at *5 (M.D. Pa. May 20, 2024) (deferring definitive resolution on *Bruton* issue until court presented with proposed statements).

**Conclusion**

The Court should deny the Defendant's Pretrial Motions because (1) the Indictment and discovery supply sufficient particulars for the Defendant to understand the charges, prepare his defense, and plead double jeopardy, and (2) Defendant Sabzevari's admissions may be sufficiently anonymized to accord with *Samia*, *Bruton*, and their progeny.

Dated: August 29, 2025                    Respectfully submitted,

                                          LORINDA I. LARYEA
                                          Acting Chief
                                          Fraud Section, Criminal Division
                                          U.S. Department of Justice

                    By:     */s/ John J. Liolos*
                                          John J. Liolos, Trial Attorney
                                          Fraud Section, Criminal Division
                                          United States Department of Justice
                                          1400 New York Avenue, NW
                                          Washington, DC 20005
                                          John.Liolos@usdoj.gov
                                          (202) 768-2246

16

**<u>Certificate of Service</u>**

I hereby certify that, on August 29, 2025, a true and correct copy of the foregoing was served on all parties through the CM/ECF system.

By:    */s/ John J. Liolos*

John J. Liolos, Trial Attorney
Fraud Section, Criminal Division
United States Department of Justice
1400 New York Avenue, NW
Washington, DC 20005
John.Liolos@usdoj.gov
(202) 768-2246