UNITED STATES U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROUZBEH "ROSS" HAGHIGHAT, BEHROUZ "BRUCE" HAGHIGHAT, KIRSTYN M. PEARL, SEYEDFARBOD "FABIO" SABZEVARI, and JAMES D. ROBERGE | Hon. Michael E. Farbiarz<br><br>Crim. No. 25-339<br><br>*Document Electronically Filed* |

**REPLY IN FURTHER SUPPORT OF DEFENDANT ROUZBEH "ROSS" HAGHIGHAT'S PRETRIAL MOTIONS**

Dated: September 12, 2025

**PAUL HASTINGS LLP**

Paul C. Gross
200 Park Avenue
New York, NY 10166
(212) 318-6000

*Attorney for Defendant Rouzbeh "Ross" Haghighat*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

ARGUMENT ........................................................................................................................... 2

    I.    The Indictment Lacks Sufficient Particulars ................................................................ 2

    II.    Discovery Does Not Cure the Indictment's Deficiencies .............................................. 5

    III.    Mr. Sabzevari's Statements are "Directly Accusatory" and Must Be Suppressed ........ 7

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Gray v. Maryland*,
    523 U.S. 185 (1998) ................................................................................................... 1, 2, 8

*Priester v. Vaughn*,
    382 F.3d 394 (3d Cir. 2004) ................................................................................................. 8

*Samia v. United States*,
    599 U.S. 635 (2023) ........................................................................................................ 8, 9

*United States v. Bin Laden*,
    92 F. Supp. 2d 225 (S.D.N.Y. 2000) ............................................................................ 3, 6, 7

*United States v. Blakstad*,
    No. 19-cr-486, 2020 WL 5992347 (S.D.N.Y. Oct 9, 2020) ................................................ 4, 6

*United States v. Buyer*,
    No. 22-cr-397, 2023 WL 1381970 (S.D.N.Y. Jan 31, 2023) ................................................... 4

*United States v. Delahanty*,
    No. CR 21-872 (MAS), 2022 WL 4237143 (D.N.J. Sept. 13, 2022) ................................. 6, 7

*United States v. Edwards*,
    No. 2:20-CR-00572-BRM, 2024 WL 1620311 (D.N.J. Apr. 15, 2024) ............................. 6, 7

*United States v. Fenner*,
    142 F. 4th 510 (7th Cir. 2025) ...................................................................................... 2, 9, 10

*United States v. Jaghama*,
    No. 23-cr-157-02, 2023 WL 8237273 (E.D. Pa. Nov. 28, 2023) ........................................... 9

*United States v. Martoma*,
    No. 12-cr-973, 2013 WL 2435082 (S.D.N.Y. June 5, 2013) ................................................. 4

*United States v. Pinto-Thomaz*,
    352 F. Supp. 3d 287 (S.D.N.Y. 2018) .................................................................................. 5

*United States v. Rajaratnam*,
    No. 09-cr-1184, 2010 WL 2788168 (S.D.N.Y. July 13, 2010) ........................................ 5, 7

*United States v. Richards*,
    241 F.3d 335 (3d Cir. 2001) ................................................................................................. 8

*United States v. Shvartsman*,
    722 F. Supp. 3d 276 (S.D.N.Y. Mar. 20, 2024) .......................................................................5

*United States v. Slawson*,
    No. 1:14-CR-00186-RWS, 2014 WL 5804191 (N.D. Ga. Nov. 7, 2014) .................................4

*United States v. Stewart*,
    No. 15-cr-0287, 2016 U.S. Dist. LEXIS 202576 (S.D.N.Y. Jan. 19, 2016) ............................4

*United States v. Stocker*,
    1990 WL 157153 (E.D. Pa. Oct. 10, 1990) .............................................................................6

*Vazquez v. Wilson*,
    550 F.3d 270 (3d Cir. 2008) ................................................................................................7, 8

## INTRODUCTION

Following its lengthy restatement of the Indictment's unproven allegations (Opp. at 1-5), the government fails to rebut Mr. Haghighat's showing that he is entitled to the modest pretrial relief that he seeks. Both of Mr. Haghighat's pretrial motions should be granted.

*First*, the government's opposition demonstrates precisely why a bill of particulars is appropriate here. Specifically, the government emphasizes the Indictment's "Acquisition Timeline," which the government claims "alleg[es] facts demonstrating [that] Ross Haghighat possessed significant MNPI and the approximate dates on which he learned the MNPI." Opp. at 1. But that Timeline identifies *dozens* of separate pieces of information—that Company-2 proposed to acquire Company-1, the various price offers that Company-2 made, Board meetings to discuss a potential acquisition, meetings with bankers and other advisors regarding such acquisition, and many others—which the government *might* identify as the MNPI that Mr. Haghighat allegedly provided to one or more of the four alleged tippees also named in the Indictment. Mr. Haghighat cannot meaningfully prepare a defense if he is not advised of what he is accused of improperly revealing to each of his co-defendants, which is why the Court should order a bill of particulars.

*Second*, the opposition ignores that, in the context of an insider trading prosecution where Mr. Haghighat is alleged to be the *sole tipper*, any reasonable jury would immediately conclude, for example, that the "he" in Mr. Sabzevari's recorded statement "he told me to go buy [Company-1]" is a reference to Mr. Haghighat. There is no other reason why prosecutors would introduce that statement at this trial—as these prosecutors concede they intend to do (Opp. at 13)—but to seek to incriminate Mr. Haghighat. This implicates the exact concern that the Supreme Court articulated in *Gray* and accordingly, suppression of the statements (if Mr. Sabzevari does not testify) is warranted. *See Gray v. Maryland*, 523 U.S. 185, 186 (1998) (suppression is warranted

1

where the jury will likely "realize that the confession refers specifically to the defendant, even when the [government] does not blatantly link the defendant to the deleted name"). The government is also wrong that because Mr. Sabzevari's statements are not "confessions," they fall outside of *Bruton* and *Gray's* protection. Opp. at 15. In fact, the one case that the government cites in support of this notion holds the opposite. *See United States v. Fenner,* 142 F. 4th 510, 520-21 (7th Cir. 2025) ("We have never held that a statement short of express acceptance of liability is immune from a *Bruton* challenge").

Simply, the government cannot show why the jury should be exposed to the challenged statements which, even in redacted form, would require a juror only to "lift his eyes to [the defendant], sitting at counsel table, to find what will seem the obvious answer" to whose name lies behind a pronoun. *See Gray* at 193.

## ARGUMENT

### I. The Indictment Lacks Sufficient Particulars.

In defending the Indictment's particulars, the government relies on the eleven-paragraph "Acquisition Timeline" for facts "demonstrating Ross Haghighat possessed significant MNPI[.]" Opp. at 1-2. This simply begs the question that Mr. Haghighat raised in bringing this motion: *which* of the dozens of pieces of potential MNPI did Mr. Haghighat supposedly provide to his co-defendants? Br. at 5. Indeed, in just three paragraphs of the Acquisition Timeline, the Indictment identifies *eight* separate pieces of MNPI that Mr. Haghighat *might* (we just don't know), be accused of wrongfully providing to others. These are:

- Company-2 providing an initial proposal to acquire Company-1 on May 4, 2023, Opp. at 2 (citing Indictment ¶ 2);
- The initial proposal offering $32 per share in cash, *id.*;
- Company-1's Board and senior management meeting on May 5-6, 2023 to discuss Company-2's proposal, Opp. at 2 (citing Indictment ¶ 3);

2

- Company-2 providing a revised offer on or about May 22, 2023, Opp. at 2 (citing Indictment ¶ 8);
- The revised offer increasing the proposed all-cash purchase price to $36 per share, *id.*;
- Company-1's Board and senior management meeting to discuss Company-2's revised offer, *id.*;
- Company-1's Board directing its financial advisor to inform Company-2 that Company-1 would be willing to proceed on a counteroffer, *id.*;
- A further counteroffer increasing the price to $40.00 per share and a contingent value right that would pay $4.00 per share under certain conditions, *id.*

Is Mr. Haghighat accused of providing all of these pieces of MNPI (plus the many others listed in the Acquisition Timeline) to each of his co-defendants, or just some of them? Did each of the co-defendants allegedly receive the same information, or was different information provided to different people? The Indictment provides no answer to these questions.

As Mr. Haghighat argued, and as the government ignored in its opposition, the answers to these questions are potentially critical to Mr. Haghighat's defense. *See* Br. at 5-6. Depending on the specific information he is alleged to have misappropriated, and to whom he is alleged to have provided that information, defenses going to materiality, publicity, and the plausibility of such an exchange may all become available. In fact, some of the information listed in the Acquisition Timeline could not possibly have been known to Mr. Haghighat at the times he is alleged to have provided MNPI to others. *Id.* Yet, without particulars, Mr. Haghighat is hamstrung and unable to prepare a tailored defense to the charges against him.

The government's string-cite of cases where courts—mostly in other districts—have denied applications for particulars in insider trading cases should not change the outcome. As an initial point, courts have held that because "the line that distinguishes one defendant's request to be apprised of necessary specifics about the charges against him from another's request for evidentiary detail is one that is quite difficult to draw . . . the precedents furnish little help in disposing of requests for bills of particulars in criminal cases." *United States v. Bin Laden*, 92 F.

3

Supp. 2d 225, 232-34 (S.D.N.Y. 2000) (collecting cases). And the cases that the government cites aptly illustrate the point—each is highly factually distinct from this case and thus provides "little help" in determining whether a bill of particulars should be ordered here.

Many of the government's cases considered only *one* plausible item of MNPI that could have been exchanged at a specific time or times. *See United States v. Buyer*, No. 22 CR. 397 (RMB), 2023 WL 1381970, at *3 (S.D.N.Y. Jan 31, 2023) (the indictment identified an insider's "to-do list" which included speaking to the alleged tippee about a merger on a particular day); *United States v. Blakstad*, No. 19 Cr. 486 (ER), 2020 WL 5992347, at *10 (S.D.N.Y. Oct 9, 2020) (identifying the MNPI as "information concerning Illumina's financial condition in advance of [four] specific earnings releases"); *United States v. Stewart*, No. 15CR287-LTS, 2016 U.S. Dist. LEXIS 202576, *1-*6, *25 (S.D.N.Y. Jan. 19, 2016)[1] (describing single issues of MNPI across five individual pending mergers and acquisitions); *United States v. Martoma*, No. 12 Cr. 973(PGG), 2013 WL 2435082, at *3 (S.D.N.Y. June 5, 2013) (explaining that the MNPI at issue concerned "detailed confidential data about the closely-guarded and still-secret results" of a clinical trial).

The few cases that identify multiple pieces of MNPI are distinguishable for other reasons. Opp. at 7-9. For example, in *United States v. Slawson*, the Indictment specifically alleged that the insider defendant improperly disclosed *all* of a variety of pieces of MNPI, therefore adequately apprising the defendant of the accusations against him. *United States v. Slawson*, No. 1:14–CR–00186–RWS–JFK, 2014 WL 5804191, at *13 (N.D. Ga. Nov. 7, 2014) (indictment alleged specific

---

[1] *Stewart* is further distinguishable given that the court determined the defendant had sufficient information to prepare for trial based, in part, on "supplemental material" available to defendant, including the Complaint's "detailed preview" of a cooperating witness' testimony. *Id.* at *30. No such material is available here.

4

MNPI "including information about Carter's quarterly and annual earnings per share ('EPS'), forward-looking guidance for the Company's future financial periods, and other financial performance information and whether such information would meet, miss, or beat internal company expectations and estimates"). Finally, while courts in the *United States v. Shvartsman*, 722 F. Supp. 3d 276 (S.D.N.Y. Mar. 20, 2024), and *United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287 (S.D.N.Y. 2018) denied bills of particulars outlining specific MNPI, neither of those cases involved a real possibility that alleged MNPI may, in fact, have been discernable to the public at the relevant time. Here, as the government again ignores, reputable investment banks issued over twenty analyst reports in the period leading up to the Company-2's acquisition, encouraging investors to "buy" Company-1, and predicting that the price of Company-1 shares would nearly double. Br. at 1. And, during that same time, Company-1 representatives attended numerous investor conferences and held meetings with individual investors to publicly promote the company and its flagship product. *Id.* On these facts, where there is a viable possibility that any information exchanged was publicly discernable, an Order directing the government to provide a bill of particulars is especially appropriate.

The government is also wrong to dismiss *United States v. Rajaratnam*, which Mr. Haghighat cited as an example of an insider trading case requiring a bill of particulars, as an "outlier based on its complexity." Opp. at 11. *This* case is complex, too. It involves four separate alleged tippees, allegations of tipping over a multi-month window, and a highly complex merger as the source of purported MNPI.

## II. Discovery Does Not Cure the Indictment's Deficiencies.

The government's reference to the "significant discovery" it has produced does not move the needle. *See* Opp. at 1, 5. The government points to nothing specific in the produced discovery that will somehow shed light on the particular MNPI that Mr. Haghighat is accused of

5

misappropriating, and Mr. Haghighat is aware of none. The mountain of documents the government has produced thus does nothing to cure the Indictment's lack of specificity in this respect, as courts have recognized is often the case. *See Bin Laden*, 92 F. Supp. 2d at 234 ("sometimes, the large volume of material disclosed is precisely what necessitates a bill of particulars"); *United States v. Stocker*, No. 89–00463–01, 1990 WL 157153, at *1 (E.D. Pa. Oct. 10, 1990) ("[D]isclosure by the government of 'mountains of documents' is not an adequate substitute for a bill of particulars when the disclosure does not provide guidance regarding what the government would prove at trial.").

The cases cited in the opposition do not compel a different result. In *Blakstad*, the government's search warrant affidavits, produced in discovery, pointed to a specific "example of insider information and the timing of communications between [tipper] and [tippee]." 2020 WL 55992347, at *10. In *Urban*, which is not an insider trading case, the defendants-appellants were provided with "documents and witness statements relied upon by the government in constructing its case, including trial evidence reflecting the dates of payments to Appellants and the approximate amounts of those payments," and statements from several confidential sources. *United States v. Urban,* 404 F.3d, 754, 772, 759. Again, the government here has pointed to nothing nearly as specific in the discovery it has provided. *United States v. Edwards* and *United States v. Delahanty*, both non- insider trading cases, are equally off the mark. In *Edwards*, a fraud case, the indictment included "12 paragraphs and subparagraphs addressing specific steps Defendant took, including details concerning [a co-conspirator's] role and kickbacks associated with his services." *United States v. Edwards*, No. 2:20-cr-00572-BRM, 2024 WL 1620311, at *4 (D.N.J. Apr. 15, 2024). And in *Delahanty*, a case charging felony use of excessive force by a police officer, the indictment "it provides the date and time of the incident, along with facts about

6

the altercation." And "[w]hat's more," the government produced "video footage of the incident from several of the police officers' body cameras that captured the events." *United States v. Delahanty*, No. CR 21-872 (MAS), 2022 WL 4237143, at *4 (D.N.J. Sept. 13, 2022). Put another way, the indictments in *Edwards* and *Delahanty* does exactly what the Indictment here *does not* do: adequately apprise the Defendant of the accusations against him.

Last, the government's throw away argument that it "need not provide particulars where it has none" is without merit. Opp. at 9. It is well established that while, the government "is not obligated to manufacture specificity where none exists[,]" it should provide what detail it does have. *United States v. Rajaratnam*, No. 09-cr-1184(RHJ), 2010 WL 2788168, at *9 (S.D.N.Y. July 13, 2010) (where the government represented that it may "rely primarily or exclusively on testimony from cooperators" who "may only be able to testify generally to providing the defendants with inside information," "the government can say so in its bill."); *cf. Bin Laden*, 92 F. Supp. 3d at 237 ("If, in good faith, the Government determines that it cannot provide the particulars we have ordered, it may so indicate in its bill of particulars and provide as much detail as it can.").

### III.    Mr. Sabzevari's Statements are "Directly Accusatory" and Must Be Suppressed.

The government is wrong that Mr. Sabzevari's use of the word "he" to reference Mr. Haghighat cures any Constitutional problem with the statements it seeks to admit. As the Third Circuit has held (consistent with Supreme Court precedent), while "it certainly is true that ordinarily the use of a term like 'the other guy'" will satisfy *Bruton*, "it is an unreasonable application of 'clearly established Federal law under the decisions of the Supreme Court of the United States' to hold that their use always will be sufficient for that purpose." *Vazquez v. Wilson*, 550 F.3d 270, 282 (3d Cir. 2008). And, here, as Mr. Haghighat argued and the government largely overlooked, the mere use of a pronoun is patently insufficient. This is a case in which a single person—Mr. Haghighat—is accused of tipping his co-defendants. *Any reference* to a tipper

7

encouraging trading in Company-1's securities that the prosecutors decide to use valuable trial time to introduce will therefore obviously refer to Mr. Haghighat. Indeed, the inference that Mr. Sabzevari was referring to Mr. Haghighat in his statements requires no effort, no linkage to other evidence, and no deliberation by the jury. As in *Gray*, that inference is one "that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial." *Gray*, 523 U.S. at 188.

The lack of other parties who might potentially be tippers is critical. As the Third Circuit has explained, "the number of persons involved is significant" because the fewer the alternatives, the more likely a neutral pronoun will be "tantamount to an explicit reference to the co-defendant." *Vazquez v. Wilson*, 550 F.3d 270, 282 (3d Cir. 2008) (finding a *Bruton* violation where the use of generic terms "my boy" and "the other guy" nevertheless "plainly identified" defendant as shooter in joint two-person trial). Thus, in *Priester v. Vaughn*, 382 F.3d 394, 398-99 (3d Cir. 2004), generic references like "the other guy" did not implicate *Bruton* where there were at least fifteen possible individuals who might have been "the other guy." By contrast, in *United States v. Richards*, 241 F.3d 335, 341 (3d Cir. 2001), terms such as "my friend" and "inside man" were deemed "blatant and incriminating" because only three people were involved.

This is clearly a case where the number of potential tippers augurs in strong favor of suppression. The authorities the government cites are inapposite. *Samia v. United States*, 599 U.S. 635 (2023), which the government cites to heavily, involved an unusual situation where anonymizing a defendant's name was necessary to avoid a prejudicial misimpression. Specifically, *Samia* was about a murder that occurred in a van, where *three* people were in the van at the time of the murder: two alleged co-conspirators (Stillwell and Samia) and the murder victim (Lee). *Samia*, 599 U.S. at 641. The government sought to admit a confession from Stillwell

8

identifying Samia as pulling the trigger and causing Lee's murder, and offered to replace Samia's name with "the other person" to avoid a Confrontation Clause violation. *Id.* at 641-42. The Supreme Court affirmed this anonymization because of the particular and confounding circumstances of the case: "editing the statement to exclude mention of the 'other person' may have made it seem as though Stillwell and Lee were alone in the van at the time Lee was shot. Such a scenario may have led the jurors—who sat in judgment of both Samia and Stillwell—to conclude that Stillwell was the shooter, an obviously prejudicial result." *Id.* at 653. Here, though, there is no risk that Mr. Sabzevari's statements will be misunderstood as identifying *Mr. Sabzevari* as the tipper, rendering the concerns asserted in *Samia* inapplicable.

The government's reliance on *United States v. Jaghama*, No. 23-cr-157-02, 2023 WL 8237273 (E.D. Pa. Nov. 28, 2023), is equally misplaced. There, it was the government's own agreement to "remove…any mention" of the defendant—rather than substitute with neutral pronouns such as "the other person"—that resolved *Bruton* concerns. *Id.* By contrast, the government here offers no such compromise.

Finally, the government advances the argument that Mr. Sabzevari's statements fall "further afield from *Bruton's* prohibitions" because, at trial, the government will not be able to show that these statements *in fact* inculpate Mr. Haghighat (even though the government offers them for that purpose). Opp. at 15. That position is unfounded. Indeed, the government's reliance on *United States v. Fenner*, at 520-21 (7th Cir. 2025), only underscores the weakness of its position. Nothing in *Fenner* suggests that a statement must recite every element of an offense to implicate *Bruton,* nor does it require that a statement be immune from challenge, and the defense is unaware of any case imposing such a requirement. To the contrary, *Fenner* expressly rejected

9

such a notion: "[w]e have never held that a statement short of express acceptance of liability is immune from a *Bruton* challenge. *Id.* at 522.

The scope of *Fenner* was narrow. The statements at issue fell outside *Bruton* because they were "consistent" with and "largely matched" the co-defendants' shared theory of defense. *Id.* at 521-22. Indeed, the court stressed that the defendant's own testimony "mirrored" the confessing co-defendant's statement and that he did not object to its admission which was, "quite possibly a deliberate choice from counsel" to "buttress his own testimony as corroborative." *Id.* No such circumstance exists here. Mr. Sabzevari's statements do not merely fail to support Mr. Haghighat's defense, they directly contradict it, and Mr. Haghighat can challenge these contradictions only if Mr. Sabzevari testifies and is subject to cross-examination.

Dated: September 12, 2025                    Respectfully Submitted,


                                             By: */s/ Paul C. Gross*
                                                 Paul C. Gross
                                                 **PAUL HASTINGS LLP**
                                                 200 Park Avenue
                                                 New York, NY 10166
                                                 (212) 318-6000
                                                 paulgross@paulhastings.com

                                                 *Attorney for Defendant Rouzbeh "Ross" Haghighat*

10