**Weil, Gotshal & Manges LLP**

VIA ECF

1999 Avenue of the Stars
Suite 1800
Los Angeles, CA 90067
Phone: +1 213 667 5100
Fax: +1 213 667 5111

**Adam Fee**
+1 (213) 667-5125
adam.fee@weil.com

July 1, 2026

The Honorable Michael E. Farbiarz
United States District Judge
District of New Jersey
Frank Lautenberg Post Office & U.S. Courthouse
2 Federal Square
Newark, New Jersey 07102

Re:  *United States v. Haghighat*, No. 25-cr-00339-MEF (D.N.J.) – Request for Release Pending Appeal

Dear Judge Farbiarz:

We write to ask the Court to grant Ross Haghighat bail during the pendency of his appeal. Under the Bail Reform Act of 1984, a court "shall" grant bail pending appeal if the defendant shows, by clear and convincing evidence, (1) "that [he] is not likely to flee" and does not "pose a danger" to "any other person or the community"; (2) "the appeal is not for the purpose of delay"; (3) the appeal "raises a substantial question of law or fact"; and (4) a favorable resolution of the appeal would result in "reversal" or "a new trial." 18 U.S.C. § 3143(b); *see also United States v. Smith*, 793 F.2d 85, 87 (3d Cir. 1986) (holding that if a convicted defendant carries his burden under § 3143, "a defendant shall be released on bail"). Each factor weighs in favor of granting Ross bail pending appeal.

1.  **Ross is Not Likely to Flee and Poses No Danger**

When considering whether a defendant is likely to flee, courts in the District of New Jersey consider:

> (1) the nature and circumstances of the offense, (2) the defendant's family ties, (3) the defendant's employment status, (4) the defendant's financial resources, (5) the defendant's character and mental condition, (6) the length of defendant's residence in the community, (7) any prior criminal record and (8) any flight or failures to appear in court proceedings prior to or during the time of trial.

*United States v. Bissell*, 954 F. Supp. 903, 907 (D.N.J. 1997) (citation omitted); *United States v. Giampa*, 904 F. Supp. 235, 358 (D.N.J. 1995). Each of these factors confirm that Ross is not a flight risk.

**Weil, Gotshal & Manges LLP**

Nothing about the nature or circumstances of the offense indicates that Ross is likely to flee. Securities fraud is nonviolent and unrelated to flight. Further, he has been on bail for over a year without issue. And in the six months since the jury rendered its verdict, Ross has complied with all his conditions of release without incident, and appeared at every court proceeding before and after trial.

Ross also has close ties to the United States, and Massachusetts in particular. It is where he has lived for 35 years. It is where he raised his family. It is where his wife, children, and grandchildren all live. It is where he built his life, has made his career, and found refuge when forced to leave Iran during the Iranian Revolution. Ross chose to live in the United States, it is his and his family's home, and he has no intention of leaving.

Ross's employment status also indicates that he is not a flight risk. Ross is currently unemployed. But his entire career has been built in the United States. His professional network is in the United States and his future job prospects lie in the United States. Similarly, a significant portion of his assets is real estate in the United States.

There is also nothing to suggest Ross poses a danger to any other person or the community. Ross has no criminal history. He was convicted of a nonviolent crime. And there has never been any suggestion that Ross poses any threat to others. Indeed, the character letters submitted in connection with his sentencing materials confirm that he is not a danger to the community but instead someone who cares for and contributes to his community.

### 2.  The Appeal is Not for the Purpose of Delay

Ross's purpose in his appeal is to obtain reversal or a new trial as soon as possible, on the basis that the conviction was obtained after legal error, so that he may clear his name. The appeal, therefore, is not for the purpose of delay. *See, e.g., United States v. Kevra-Shiner,* 2017 WL 4310220, at \*2 (M.D. Pa. Sept. 28, 2017) (finding the "appeal is not for the purpose of delay 'as the appellate issues are raised in the good faith belief that they are meritorious and deserve consideration on appeal.'"").

### 3.  The Appeal Presents a Substantial Question of Law

"[A] court must determine that the question raised on appeal is a 'substantial' one, i.e. it must find that the significant question at issue is one which is either novel, which has not been decided by controlling precedent, or which is fairly doubtful." *United States v. Miller*, 753 F.2d 19, 23 (3d Cir. 1985). The Third Circuit has interpreted "substantial" to mean "fairly debatable." *Smith*, 793 F.2d at 89. The substantial-question inquiry does not require the Court to conclude that it erred or to predict that the Third Circuit will reverse. *Miller*, 753 F.2d at 23. There is a substantial question of law about the propriety of the Court's response to Jury Note 1 because it either (1) permitted the jury to convict Ross without establishing all elements of the crime, or (2) introduced a theory of guilt that was never tried, not presented to the jury, and that Ross never had any opportunity to rebut.

At trial, the jury was presented with a binary choice between two competing theories: (1) the government's theory that Ross told his co-defendants that Novartis had offered to acquire Chinook, and

(2) the defendants' theory that Ross merely recommended to his co-defendants that they buy Chinook stock based on public information, similar to how Chinook executives were publicly encouraging investors to buy, and in the same way analysts were uniformly giving buy recommendations. *See, e.g.*, Trial Tr. 47:5, 9–10 (A. Fee stating it "is entirely lawful" for Ross to recommend buying Chinook without informing people of the Novartis acquisition); *id.* 2479:13–15 (A. Fee arguing that "the whole case" is whether Ross "actually t[old] these folks about the Novartis offers"); *id.* 2555:24–2556:2 (Government arguing that each co-defendant could have been "told that something big, a big deal was around the corner in the near term that would make Chinook shareholders and option holders a bunch of money").

During deliberations, however, the jury sent a note asking, "[f]or something to be considered a 'tip' does MNPI need to be explicitly stated by the 'tipper'?" ECF 310. The Court answered that there are "any number of ways to convey MNPI," some "explicit" and some "implicit," but "under any circumstance, the MNPI must be conveyed with the requisite intent and knowledge specified in the instructions[.]" Tr. 2625:7–13. While the Court's answer may have been legally sound in isolation, it created a substantial risk of confusion in the trial's specific context. The response can be interpreted in two ways, either of which raises a substantial question about whether the response amounted to legal error.

*First*, in the context of the trial, the jury could have interpreted the Court's response that MNPI may be conveyed "implicitly" to mean that the jury could convict Ross for merely repeating publicly available information, *i.e.*, the public "buy" recommendation. "It is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). The trial had nothing to do with implicit tips and the means of conveying MNPI was not at issue. The government never argued that Ross informed his co-defendants about the merger through implication, let alone articulated a theory of how Ross could have done so. And the Court's original instructions did not mention implicit tips. So, when the jury asked "[f]or something to be considered a 'tip[,]' does MNPI need to be explicitly stated by the tipper," ECF 310 at 1, the jury was not asking about the mechanics of how to convey information; rather, it was seeking clarification on whether it could convict Ross even if it accepted his theory of the case.

In its response, the Court isolated Jury Note 1 from the context of trial. The jury was making a straightforward choice between two competing narratives. But by telling the jury that MNPI can be conveyed implicitly when the means of communicating MNPI was undisputed, this Court created a substantial risk that the jury would understand its instruction as allowing the jury to treat the lawful repetition of the public buy recommendation as an illegal "implicit" tip. A reasonable juror could have understood the Court's response as permitting conviction based on an implicit conveyance theory—and therefore as allowing conviction on conduct that the parties agreed was lawful (recommending stock based on public information without expressly mentioning the merger). That understanding would have relieved the government of its burden of proving that Ross actually communicated information about the Novartis acquisition to the co-defendants. See *United States v. Hughes*, 117 F.4th 104, 107 (3d Cir. 2024) (noting that a court should interpret jury instructions according to how "a reasonable juror could have understood the charge as meaning" (quoting *California v. Brown*, 479 U.S. 538, 541 (1987))).

The Third Circuit has reversed a district court's denial of a defendant's request for bail pending appeal in similar circumstances where there was a substantial question about whether a jury instruction

**Weil, Gotshal & Manges LLP**

permitted a jury to convict the defendant based on innocent conduct. In *United States v. Messerlian*, the Third Circuit reversed a district court's denial of a request for bail pending appeal where the appellant contended "that the district court's charge to the jury failed to distinguish between the use of excessive force with an intent to inflict summary punishment, which Messerlian claims would constitute a constitutional violation, and the mere intentional use of excessive force caused by over-reaction or excessive zeal, which Messerlian argues would not be a violation of 18 U.S.C. § 242." 793 F.2d 94, 96 (3d Cir. 1986). The Third Circuit "expressly intimate[d] no views with respect to the merits of Messerlian's appeal on these issues" but acknowledged that the appeal "could affect all three counts upon which Messerlian was convicted." *Id.* at 97. Likewise, because all Ross's convictions depend on a finding that he passed MNPI, a ruling on the Court's response to Jury Note 1 would affect the verdict on all the charges.

*Second*, even if this Court disagrees with the contextual understanding of Jury Note 1, the response was still erroneous because it suggested that the jury could convict on an implicit tip theory the government never argued and for which no evidence was presented. As set forth above, the case was tried as a choice between two theories about what Ross told his co-defendants. An implicit tip theory was never tried and no evidence or testimony supported it. Indeed, it is entirely unclear how Ross could have communicated to his co-defendants this highly specific information—that Novartis was seeking to acquire Chinook—through implication. The response, therefore, improperly introduced a new theory of guilt that was not before the jury. *See, e.g.*, *United States v. Brooks*, 394 F. App'x 953, 955 (3d Cir. 2010) ("[A] jury should not be instructed on an issue for which there is so little evidentiary support that no rational jury could accept it." (citation omitted)). Worse still, Ross never had an opportunity to rebut this new theory because the theory was inserted after closing arguments.

Under either understanding of the response to Jury Note 1, therefore, Ross respectfully contends that its propriety presents a substantial question that is fairly debatable.

### 4.   A Favorable Resolution Would Result in Reversal or a New Trial

"After the court finds that the question on appeal meets the . . . 'substantial' test, it must determine whether that issue is sufficiently important to the merits that a contrary appellate ruling is likely to require reversal or a new trial." *United States v. Miller*, 753 F.2d 19, 23 (3d Cir. 1985). Section 3143(b) does not require the district court to predict the probability of reversal but asks whether the substantial issue is integral to the conviction such that a favorable ruling would likely require reversal or new trial. *Smith*, 793 F.2d at 88.

Ross contends that the Court's answer to Jury Note 1—whether viewed in context or in isolation—constituted a legal error. If the Third Circuit agrees, there will be a new trial. *See, e.g., Bollenbach v. United States,* 326 U.S. 607, 608 (1946) (reversing decision to uphold a conviction where the trial court failed to respond to jury questions with "concrete accuracy"); *United States v. Kopstein*, 759 F.3d 168, 172 (2d Cir. 2014) ("Even if an initial instruction is not itself erroneous or highly confusing, a supplemental instruction prompted by a jury question may be so muddled as to warrant vacatur."); *United States v. Syme*, 276 F.3d 131, 144 (3d Cir. 2002) ("[I]f one of two or more alternative theories supporting

Page 5                                                    **Weil, Gotshal & Manges LLP**

a count of conviction is either (1) unconstitutional, or (2) legally invalid, then the reviewing court should vacate the jury verdict and remand for a new trial without the invalid or unconstitutional theory.").

\*         \*         \*

All factors weigh in favor of granting Ross bail pending appeal.


Respectfully submitted,

*/s/ A. Fee*
Adam Fee